324-0039, the people of the state of Illinois, Appalee, versus Jeremy Peters, Appellant. Ms. Sirian Ariannon, are you ready to proceed? Yes, I am. Thank you. May it please the court, counsel. My name is Vaidehi Sirian Ariannon, and I'm an Assistant Appellate Defender at the Office of the State Appellate Defender. I represent Mr. Jeremy Peters, the appellate in this case. I'm going to be focusing primarily on Issue 1, but I'm happy to answer any questions your honors have on Issues 2 and 3. This is a case about seriousness and upholding our confidence in the judicial system. As we all know, Rule 401 requires that the trial court admonish the defendant to the minimum and the maximum sentence that he faces, amongst other admonishments, in order to impart upon the seriousness of electing to proceed without counsel. Here, when the defendant requested to waive counsel, the trial court responded by saying, this is awesome, and the public defender agreed that this is awesome. The next day, the court did the plea colloquy, and it admonished the defendant that he was facing a minimum of six years in the Illinois Department of Corrections, when in reality he was facing 15 years, more than twice what he was told. The defendant, when the defendant's waiver of counsel was accepted, and he went through discovery, trial prep, plea negotiations, and voir dire, and on the cusp of trial, that is when the state informed the trial court that they had mistakenly admonished the defendant that he was six years, when in reality he was facing 15. This was an error. The court, the state tries to argue that the defendant forfeited this issue, or that this was invited error. However, it is neither. The presumption that relies under Rule 401 is that the defendant does not know the minimum and the maximum sentence that he faces, amongst the other information and admonishments under Rule 401. The reason why this rule exists is to give the defendant the information he needs to be able to knowingly waive counsel. So, we cannot expect that when the trial court mistakenly gives the defendant the wrong information, that the defendant would be in a position to be able to object to receiving the wrong admonishments. Moreover, this is not invited error. Invited error is when the defendant agrees to a specific erroneous procedure to his own detriment. Here, the defendant could not have agreed to be told the wrong minimum or to be in a position where he is waiving counsel without having a full knowledge of a circumstance. This case in particular is problematic because, as I mentioned, the defendant went through discovery. He went through trial preparations, plea negotiations, and voir dire without the assistance of counsel and without knowledge that he was actually facing a minimum penalty of 15 years. While the state may argue that eventually he was told the right minimum and he did elect to proceed without counsel at that point, what the state is not recognizing is that it was too late. Rule 401 requires that the defendant be informed of the minimum sentence at the time that the defendant waives counsel, so he's able to make an informed waiver. By the time the defendant had reached past voir dire and was on the cusp of trial, it was too late because he'd already sunken so much preparation into doing trial prop discovery, things like that, and he was concerned about his speedy trial rights. So at that point, he had no choice but to proceed without counsel because if a new counsel was appointed, that counsel would of course have to go through discovery again, have to prepare, and so there was a possibility that he would not be able to conclude his trial within the speedy trial term. So how do you differentiate that from Wright Supreme Court case? Illinois Supreme Court case, excuse me. Your honor, it's different from Wright because in Wright, the defendant specifically stated that the reason that he was waiving counsel originally before any trial proceedings occurred was because of his speedy trial rights. On the record, he said that his public defender and him disagreed about the rights and waiver of counsel are always in opposition with each other. It was just that in that case, the defendant stated that that was the reason why he was specifically waiving counsel. Well, didn't Mr. Peters also say that he that was one of the reasons he was waiving counsel? No, your honor. He noted his speedy trial rights, but he never said anything like I'm waiving counsel for my speedy trial rights. He brought it up because he was obviously very concerned about it, but he never said anything along the lines of I don't want to have the public defender because I want a speedy trial. And there was no indication that the public defender would prevent him from having a speedy trial. And in this case, as I mentioned, eventually he did have to make that choice between his speedy trial rights and waiving counsel because he was told the minimum at the point of trial. That situation should not be held against the defendant because it's not he was not the one who put himself in that situation. If he had been told the correct minimum at the time that he originally waived counsel, then he would have been able to truly think about the situation he was in, the consequences of proceeding without counsel. And at that point, he could have decided that he wanted to waive counsel. But here, because he was not told until the trial, until right before the trial, he was forced to choose between the two rights. And I think it would be absurd to allow for a trial court erroneously telling the defendant the wrong minimum to be held against the defendant. And it would be absurd to hold against the defendant him making a choice when he never put himself in that situation. So if this would have happened a month before, whatever the time, not after the jury had been selected and sworn, you might be making different arguments that we're saying? It could be possible for me to make a different argument. But in this case, it was after Bois and it was after the jury was selected and sworn. So, I mean, I could say that depending on the circumstances, it could have been different. Ultimately, under Rule 401, he should have been told at the time that he waived counsel. But I think here it's just problematic that he was told so close to trial. And what also is very problematic in this case is he actually went through plea negotiations without the assistance of counsel and while believing that he was facing a minimum of six years. Do we know that? Could you ask that question again, please? Do we know that? Do we know that during plea negotiations things remained as they looked on the record or that they were straightened out in some way? The record indicates that he was not told until the trial because the state itself brings up for the record that he was actually facing a minimum of 15 years. So, we cannot presume that he at some point found out. And it's important to note that he had waived counsel and under the presumption of Rule 401, we have a notion that the defendant could not figure this out by himself and that's why he needs to be told that the minimum was 15 years. So, based on that, it really indicates that he did not know and he was going off of what the court had told him, which was that he was facing a minimum of six years. And it's problematic because there were some indications from the state that he received an offer that was less than 15 years because the state, at the conclusion of the trial, said we offered something to the defendant. It was different than what this was. There's a possibility that the state may have asked, may have offered to dismiss the count one and enter a conviction under count two that was, let's say, less than 15, but maybe above six. And so, for example, if they offered 12 on count two, he may have rejected that offer. And there's some indications that he rejected the offer, believing that that offer of 12 years is twice as much as what the minimum he was facing, when in it was three years less than the minimum he was facing. So, the problem here is that he went to plead negotiations and rejected an offer without knowing his situation and without knowingly rejecting an offer. And this is obviously a very problematic instance, but also the fact that he went through discovery and voir dire and all those things without counsel, without knowing his situation, in itself is an error and very problematic in this case. And I think this really undermines our confidence in the court. We should not have parties coming into the courtroom and not feeling like they can get correct information from the court and feeling as if whatever the court says, if it's incorrect, it doesn't matter for my case or it could be held against me. We should have our confidence that the trial court will be able to give us correct information. And if they don't, there's some recourse available to make sure that the proceedings are fair. And while here we did not, this error was not preserved in the trial court below. We would ask this court to review under paying error, because as I mentioned, we should not expect that a defendant should be able to object to an error when he does not understand that he has been given wrong information. And this is also an error that is so serious that it truly impacts the fairness of these proceedings and the integrity of the judicial process as a whole. So here we're going to, we're asking that this court vacate the defendant's conviction, remand for a new trial so that he is able to get the right admonishments and be able to knowingly either retain counsel, obtain counsel or waive or plea, but be able to have a fair proceeding when he knows, where he knows all the facts and has the information that he needs to proceed. If you have any questions for me, I'm happy to answer them on this issue, as well as issues two and three. Thank you. Justice Albrecht, Justice Davenport. Just one quick question, counsel. Judge Goodman, who was apparently the trial judge that was assigned for the jury, offered to stop everything, bring in and impanel a new jury, correct? Yes, Your Honor. So she did offer to retain counsel. What she asked was, would you like to waive counsel still? And she said, you can't change your mind now that I've admonished you to the correct number. And I would have let go of the jury and we would have done these proceedings. However, as I mentioned, it was too late at that point because the defendant had gone through all those proceedings himself. He'd put in all that time and he was concerned about his speedy trial rights. So even though Judge Goodman technically provided that choice for him, it was no choice at all. The only choice he had was to just proceed without counsel because it was just so late into the proceedings. Thank you. Nothing further. Didn't she conclude that colloquy with the defendant? Are you sure you want to go ahead without an attorney? Wasn't that the last thing she said before she brought the jury in? Yes, Your Honor. She did say that, but as I mentioned, it was too late. And there is a pressure when the jury is right outside the door, when you've gone through all these proceedings, to just continue as is rather than wasting the time of getting a new counsel, having them go through all those proceedings. So the defendant could not, in that moment, even truly evaluate his situation and evaluate the new information that he was facing a minimum of 15 years because there's too many pressures around him at that point. If he had been given that minimum earlier, then he could have truly thought through his situation and really understand the seriousness of what he was doing. But because it was far too late in the proceedings, it was just too late for him to be able to truly understand what was his situation. A couple more questions that you haven't brought up. One is you seem to argue that there was an improper admonishment by Carlson, Judge Carlson, not just based on the inflammatory or appearing to be inflammatory comments, but in the way that he announced that you had an absolute right to counsel and then said you have a right to have counsel appointed to you from the public defender's office. Do you want to elaborate on that? Yes, Your Honor. I noted those comments just to say that throughout this proceeding, there was an issue of these admonishments not being what was necessary. And that's just an ongoing theme throughout this case that the trial court is not taking this proceeding seriously because he made those comments. This is awesome about waiving counsel because he did not have his due diligence of giving him the right minimum. He actually gave him the wrong minimum twice. And because he's admonishing him, you have a right to counsel, but in a way that makes it seem as if he only has a right to counsel by the public defender and not obtaining private counsel. So I highlight those issues just to show that this is not the only error in this case, the improper admonishments regarding the minimum sentence, but that is the most serious error. But there's a lot of other things going on that really indicate that there's a problem here where these proceedings were just not taken seriously. And defendant was prejudiced because of this, and he was not given a chance to have a fair proceeding. And as it relates to the final argument, one act, one crime, there was three offenses he was convicted of. You believe it only applies to the one? Yes, Your Honor. I believe it only applies to the one offense. And I believe the state in its response also agreed that it would apply to that one offense. All right. Thank you very much. You'll have five minutes in rebuttal. Mr. Atwood, if you're ready to proceed. Yes, Your Honor. Good afternoon, Your Honors. Counsel, may it please the court. My name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. There are three issues before the court, but I'll be addressing the first two issues primarily. The first contention that defendant raised was that the trial court failed to substantially comply with Rule 401. Specifically, defendant has argued that he was misadmonished as to the proper minimum sentence. We don't dispute that he was provided the wrong year. However, his contention is forfeited under the Doctrine of Invited Error. The Doctrine of Invited Error essentially states a defendant cannot agree to proceed with one procedure in the trial court and then on appeal claim that that very procedure was done in error. What about the fact he's representing himself, counsel? It's not held to any different standard under our case law. If a defendant chooses to go pro se, he's still held to the same standard as if he were represented by an attorney. So he's supposed to know the judge was wrong? In the initial statement, when he was initially admonished, you know, the case law says he's expected to perform as an attorney would. Even if we were assuming in that moment he's not expected to know the judge was wrong, the critical moment is when he was standing there after the jury was empaneled and when Justice Goodman offered him the opportunity to continue the trial within the speedy trial period. She even attempted to meet him on his terms because he was so focused on that. And when we talk about invited error, the crux of it is we're trying to prevent gamesmanship. We're trying to prevent an injection of errors that could otherwise be cured. Here, the state brought it to the court's attention that he was misadmonished. The defendant was present when this happened. They told him what the minimum was actually going to be. And as your honors noted, Justice Goodman provided him with a clear opportunity. I will dismiss this jury. We will continue this within your speedy trial rights. You can be properly admonished. The other inferences to be made is that you can consult with an attorney. Perhaps you can re-engage in plea negotiations with this new information. Any of these things would still be possible. You would suffer no prejudice whatsoever if you agreed to this procedure that was offered to you, and yet the defendant explicitly said no. He asserted his speedy trial right, and he wanted to proceed with the trial. That is as clean cut of invited error doctrine as you can have. Regardless of whether he was misadmonished before, the state did its duty. It attempted to cure this error. The defendant refused to allow the error to be cured. And now on appeal, he's arguing that he was prejudiced by this very error. This court should find that he's forfeited that error. It's clear cut. But even if this court found that that issue isn't forfeited, the record also shows us that the defendant was not prejudiced by this decision. And when we're determining whether a defendant was prejudiced by a failure to substantially comply with Rule 401A, which we're not totally conceding in the brief, even if you found that there wasn't substantial compliance with this misadmonishment, we look at the entire record. We consider what's his experience with the criminal justice system? What's his age? What's his education level? Are there any other reasons that we can ascertain from the record as to why he made this choice? And can we determine whether it was voluntary and knowing? So if we look at this record, as your honor pointed out, on page 20 of the record, he refuses to have counsel. He wants to proceed pro se because he's very concerned about his trial rights. He raises them over and over again throughout the entire course of the proceedings. We know this defendant has extensive experience with the criminal justice system, having been convicted in three different jurisdictions of sundry felony crimes, including violent crimes. He's in his 30s. He has some college. So this is not someone who's operating with a complete lack of familiarity with the criminal justice system or someone that could possibly be suffering from a low IQ or a situation like that. There's nothing in the record to give us that indication. But when we look at the court in right, as your honor noted, the situation is very similar. It was a misadmonishment regarding the sentencing range. The defendant there from the get-go was completely preoccupied with enforcing his speedy trial rights. And the court there, when they look at the entire record, they consider that he had some college. They consider that he was in his 30s. But importantly, and dispositive of this case, the court there looked at his basis for waiving counsel. And it had nothing whatsoever to do with the sentencing range that he was facing. That is precisely the case here. The defendant over and over again was preoccupied with speedy trial. It is clear that the sentencing range played no role in the calculus of his making. And it's even more apparent when we look at that interaction with Justice Goodman and the prosecutor after the jury had been impaneled. He's given the choice. He's told what the sentencing minimum that he faces is. And without question, he cares not at all about the sentencing range. He's only worried about speedy trial. Mr. Atwood, didn't Judge Goodman say that his right to speedy trial would be told? She said that she would quote set another date within the speedy trial term on page 162 of the record. And? And then she asked if he was sure he wanted to represent himself. Let me one moment, please, Mr. Sure. Go ahead. Thank you. And so this was this was not a situation where counsel claims it was too late or that he suffered prejudice because we know the reasons why he was making the choices he was making. And it wasn't based on on a potential misadmonishment. And the fact that counsel talks about, oh, he could have had this knowledge. You know, he did all of his pretrial work based on not having the proper sentencing range. I would question how does not knowing the accurate minimum sentence affect discovery or preparing for potential witnesses? I think that's sort of a red herring argument that not knowing the minimum sentence would somehow change how he would present evidence in this case. I think it's also important to note that it's not too late. He was not given a Hobson's choice. He was given a clear choice by Justice Goodman. We can fix this. We can let you know you can potentially engage the state in future plea negotiations all within the speedy trial term. And he chose not to. And so I think it's clearly invited error. And even if it's not, there's certainly no prejudice because the sentencing simply did not factor into the decision. And that's where we know it was voluntary and it was knowing and intelligent because he had a priority. Perhaps his experience with the criminal justice system in the past made him bitter towards having representation. As your honor pointed out, perhaps he wanted to avoid excessive continuances for a public defender to prepare for the case. We all know public defenders offices are often burdened and defendants have to wait their turn in line for their attorney to be ready. Perhaps he want to mess with all that. Perhaps he realized he'd been caught red handed by the officers with the firearm and elected to just go through the trial as quickly as we could. Part of the problem here is that we don't have in the record any of the discussions related to the plea agreements and what was going on behind closed doors. It's even difficult to try to infer from what we do have because we know on that same page in the record, the state's attorney told the court that number one, this was just for the record. I want to make sure the defendant knows that you know this has an enhancement with it. And then the state's attorney mentions shortly below that, I just want to make sure he was pro se from the beginning. So when he was arraigned, but I know when we had spoken that this was 15 and not six. Perhaps you could infer from that that he'd spoken to defendant during plea agreement or during plea negotiations and it's 15 not six, but counsel just simply wanted to make it a clear record that defendant now knows the minimum is 15 years. Defendant doesn't seem to be surprised by the fact that it's 15 years when they tell him that on the record. So I think it's not a reasonable inference for counsel to argue that all these factors had some negative prejudicial effect on his preparation for trial. And so with that, I would find that even if the court concluded that it wasn't forfeited, that he also wasn't prejudiced. Turning to the second issue regarding the application of Bruin to these facts, there's just a few things I want to touch on and it's mostly just regarding the evolution of the case law on this particular issue. In Bruin, as your as your honors are probably well familiar with the number of cases that have come through, the new test that was announced in Bruin asked the court to first consider whether this defendant's conduct is covered or presumptively protected by the Constitution. And if so, is this a regulation that would fall within the nation's historical tradition of firearm regulations? Regarding that first element, this is the question of whether or not a defendant constitutes or falls under the people as defined by the Constitution. And in People v. Travis not too long ago, this court, I think including Justice Davenport and Justice Heddle, you both sat on that panel and you concluded that the defendant's conduct was presumptively protected. That is, that convicted felons also enjoyed that presumptive protection. The case law has really begun to evolve over the last year regarding that particular issue. Both interpretations seemingly stem from first district appellate court cases, People v. Baker, which stated that defendants are not presumptively protected if they're convicted felons, and People v. Brooks, which stated that they are. This court adopted the Brooks approach. The Illinois appellate courts are starting to walk away from the Brooks approach and adopt the Baker approach. And when this court made that determination in Baker, the key line that this court relied on was from D.C. v. Heller. And this court stated that it defined the people as all Americans, quote. Well, this interpretation, I believe, is evolving because if we look at Bruin, it refers to the term law-abiding citizen. And this was nothing new at the time. It says it 38 times, law-abiding citizens. Courts interpreting Baker saying that law-abiding clearly denotes individuals who have not been convicted of felonies, violent or otherwise. But when we look at Heller and we think about these presumptions, we got another signal from the U.S. Supreme Court in Rahimi, which was trying to interpret the meaning of responsible citizen because Rahimi had not been convicted of any crime. He'd simply violated an order of protection. And the Rahimi court had a number of concurrences dealing with the fact, you know, responsible is a vague word. I would submit to this court, while responsible may be a vague word, law-abiding is not. And if we look at the concurrences in Rahimi, they are talking about Second Amendment interpretation. And Justice Kavanaugh is analogizing the Second Amendment to the First Amendment and talking about 233 years we've rejected absolutist interpretations. Justice Barrett said ratification is where we should look for interpretation as to what the people mean. And she cited the same provisions I cited in the brief regarding the Massachusetts and Pennsylvania delegations to the ratification conference for the Second Amendment. Those delegations stated in Pennsylvania, they proposed a Second Amendment that would read as such, no law shall be passed for disarming the people or any of them unless for crimes committed or real danger of public injury from individuals. In Massachusetts, Sam Adams proposed that gun rights would be limited only to, quote, peaceable citizens. Ultimately, these amendments were not incorporated. But the historians that have been writing on this period stated that the reason these things, these issues during the debates of what became the Second Amendment weren't incorporated was because this limitation was understood. So essentially, they were saying the framers and the ratifiers had common sense. They did not want to enshrine a constitutional right to possess firearms to individuals who were violent and dangerous. It was understood that you wouldn't do that. And so when we look at Heller, this court said that Heller had defined the people as all Americans. But in actuality, Heller stated that it was operating from the presumption that all Americans are covered under the language of the people. I think Rahimi is signaling that that presumption is not unassailable. That presumption can evolve just like First Amendment exceptions have evolved and other Second Amendment exceptions have evolved. So I would ask this court in clothing, reconsider whether or not the people actually encompasses the behavior of violent convicted felons. The term law abiding is clear. Bruin mentioned it over and over and over again. Other courts are starting to reject Brooks. They are distinguishing and disagreeing with Travis and other courts that adopted that ruling. And I would simply ask that this court reconsider whether or not the defendant actually falls under the term the people. And with that, I would ask this court affirm defendant's conviction and sentence if there are no other questions. Justice Devenport? Justice Albrecht? No. So I'm just going to turn you back to the first issue. So the jury was sworn. And my understanding of that has always been over 30 years now that the trial began begins when the jury is sworn. So if she was to follow through on what she said, Justice, excuse me, Judge Goodman would have had to declare a mistrial. Now that's an issue I did not research from that perspective. That might require supplemental briefing. But my gut instinct is because we've not started the presentation of evidence, Justice Goodman still retain the authority over her courtroom to dismiss that jury without necessarily declaring a mistrial because no evidence had been presented. There'd be no, to my knowledge, having never researched an issue like that, there'd be no potential for a mistrial. And I didn't encounter any when I was looking up that issue. So I don't think that would have been required, but I am happy to brief it because I had not even really considered that application until that question. No, I don't think the defense has raised it as I had stated it. They've raised it as the pressure that anyone would be under as the jury is about ready to walk into the courtroom and changing their position. But I don't have any further questions. So thank you very much, Mr. Atwood. And we'll turn it back over to Mr. Sir, excuse me, Ms. Sarianen. Thank you, Your Honor. So I would just like to reiterate that this situation cannot be considered invited error because the defendant didn't specifically acquiesce to getting the wrong admonishments, not unknowingly waiving counsel without knowing a situation, being in a situation where the jury is impaneled and trial's about to come up and the state at that point informs the court that he was misinformed as to the minimum sentence he's faced. He did not agree to all of this procedure. So it cannot be held against him in that way. And I would like to know that as you've kind of noted in your last question, Justice Heddle, that there's a lot of pressure when the jury is about to walk in, trial's about to start. And in that situation, we cannot expect that the defendant was able to accurately and truly think through the consequences of proceeding without counsel and not asking to have the public defender appointed to assist him with understanding why the impact of him having a minimum of 15 years. He went through all of those procedures. He's sunk in so much time. And while Judge Goodman did say that they could set a new date within the speedy trial term, realistically, he would not have a trial within the speedy trial term because he waived counsel so early on. So if counsel was reappointed, they would have to go through all of the procedures again, learn about the case. He's facing several counts. There's a lot of evidence in this case. So there would be a lot of preparation from that point. So realistically, he would not have had a trial within the speedy trial term. And the reason why he was in that situation is because he wasn't informed of the right minimum at the time when he waived counsel, which is required under Rule 401. So truly, we should not be expecting that the defendant could truly evaluate his situation at that point because there's just too many pressures on him. The state also raises Wright and discusses how in Wright, the defendant was given the wrong maximum, but the court found that his waiver of counsel was valid because the defendant had specifically said that he was doing it because of the speedy trial rights. In that case, it was very explicit that the reason why the defendant was waiving counsel was because of his speedy trial rights. He outright says, me and my public defender disagree on our speedy trial rights. He says it on the record. He makes it clear that that is the reason why he's waiving counsel. Here, we don't have any indications in that vein. He waives counsel so early on. We don't know if they've ever had a conversation. So we cannot say that he is waiving because of his speedy trial rights. We actually don't know why he is waiving counsel. And the court does not ask him why he's waiving counsel. So we can't make presumptions because he's concerned about one constitutional right, that that is the reason why he's waiving another. These rights are not in opposition with each other. And we should not put them in opposition with each other. Along with that, I would like to note that prejudice is not required in this case because we are asking this court to review under second Plonk-Prain error that the error itself is so serious that it affects the fairness of the proceedings. Along with that, the Illinois Supreme Court has stated that depriving a defendant from his right to counsel of choice is a structural error. So in this case, in itself, this error is so problematic and we don't need to show prejudice. But of course, as I've noted, there's significant prejudice in this case because the defendant was working under the belief that he was facing a minimum of six years, going through different procedures, going through plea negotiations, believing that. And also, he waived counsel and had difficulties throughout the process because he did not have the assistance of counsel. And I would just like to quickly turn to the second issue. So I would ask this court to follow its previous decision in Travis to find that criminal felons are part of the people. And along with that, turning to Rahimi, Rahimi was a unique case where the statute itself has a finding of dangerousness embedded into the statute. So the judge had to find that that particular person was dangerous. And the court upheld that statute because it was baked into the statute itself that there's a finding. Here, felons are, the statutes, the dispossession statutes in Illinois are way too broad because any felon who has a gun is subject to the statute. But felony, there's a wide range of felonies. There are nonviolent ones and there are violent ones. So someone who has committed tax evasion, I see that my time is up. May I finish my thought? Go ahead. So someone who commits tax evasion is prosecuted on, who has a tax evasion felony, is prosecuted on the same statute as someone who's committed a murder. And it feels problematic in that sense because it's just too broad and there's no specific finding that this person is dangerous. And this is why we need to dispossess them of weapons. And that's why it's just unconstitutional in general because of that. I would just like to conclude and say that I hope I asked this court to vacate the defendant's convictions and remand for a new trial, as well as the relief requested in issues two and three. Thank you, counsel. Any questions? No. No. I don't have any further questions. Thank you very much for your arguments, counsel. I will take this case under advisement and render a decision in due course.